IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| R.B., a minor, by her natural parent, legal custodian, and next friend, ERICA CHANDLER, and ERICA CHANDLER Individually, | § § § § § | CIVIL ACTION NO.  2:23-cv-00210 |
| Plaintiffs, | § § | |
| v. | § § | DEMAND FOR JURY TRIAL |
| COMMUNITY HOSPITAL OF ANDALUSIA, LLC d/b/a ANDALUSIA HEALTH, KNIGHT HEALTH HOLDINGS LLC d/b/a SCIONHEALTH; LAVERNESS BRAND, R.N.; JOAN MILLS, R.N.; LINDA DEWRELL, R.N., LEE CARNEY, M.D., and COVINGTON GYNECOLOGY, P.C. d/b/a COVINGTON OBSTETRICS AND GYNECOLOGY, | § § § § § § § § § § § | |
| Defendants. | § § | |

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiff R.B., a minor, by her natural parent, legal custodian and next friend ERICA CHANDLER, and ERICA CHANDLER, Individually, by and through their counsel, file their First Amended Complaint against Defendants COMMUNITY HOSPITAL OF ANDALUSIA, LLC d/b/a ANDALUSIA HEALTH ("Andalusia Health" or the "Hospital"), KNIGHT HEALTH HOLDINGS LLC d/b/a SCIONHEALTH ("ScionHealth"); LAVERNESS BRAND, R.N.; JOAN MILLS, R.N.; LINDA DEWRELL, R.N., LEE CARNEY, M.D. and COVINGTON GYNECOLOGY, P.C. d/b/a COVINGTON OBSTETRICS AND GYNECOLOGY ("Covington OB/Gyn"), as follows:

**PARTIES**

1. As of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, Plaintiff Erica Chandler was and is an individual who is a citizen of the State of Florida by virtue of having a fixed residence in the State of Florida and an intent to remain there indefinitely Plaintiff Erica Chandler was and is also the next friend, natural mother, and legal custodian of R.B., a minor.

2. Upon information and belief, as of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, Defendant COMMUNITY HOSPITAL OF ANDALUSIA, LLC d/b/a ANDALUSIA HEALTH is not a citizen of the State of Florida for purposes of diversity jurisdiction because none of its members are citizens of the State of Florida. Community Hospital of Andalusia, LLC d/b/a Andalusia Health has appeared and answered in this case.

3. As of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, LAVERNESS BRAND, R.N. was and is a citizen of the State of Alabama.by virtue of being a natural person over the age of nineteen years who resided and resides at 29486 Rose Hill Road, Andalusia, Covington County, Alabama 36421 and intended to remain there indefinitely. Laverness Brand, R.N. was a registered nurse at Andalusia Health in Covington County, Alabama at all times during the acts or omissions giving rise to this action.   Laverness Brand, R.N. has appeared and answered in this case.

4. As of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, JOAN MILLS, R.N. was and is a citizen of the State of Alabama.by virtue of being a natural person over the age of nineteen years who resided and resides at 23552 Claudie Boutwell Rd, Andalusia, Covington County, Alabama 36421 and intended to remain there indefinitely. Joan Mills, R.N. was a registered nurse at Andalusia Health in Covington

County, Alabama at all times during the acts or omissions giving rise to this action. Joan Mills, R.N. has appeared and answered in this case.

5.  As of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, LINDA DEWRELL, R.N. was and is a citizen of the State of Alabama by virtue of being a natural person  over the age of nineteen years who resided and resides at 1706 Garden Street, Andalusia, Covington County, Alabama 36421 and intended to remain there indefinitely. Linda Dewrell, R.N. was a registered nurse at Andalusia Health in Covington County, Alabama at all times during the acts or omissions giving rise to this action. Linda Dewrell, R.N. has appeared and answered in this case.

6.  As of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, LEE CARNEY, M.D. was and is a citizen of the State of Alabama.by virtue of being a natural person  over the age of nineteen years who resided and resides in Covington County, Alabama and intended to remain there indefinitely. Lee Carney, M.D. was a practicing physician in Covington County, Alabama at all times during the acts or omissions giving rise to this action.  Lee Carney, M.D. is a citizen of the State of Alabama. Lee Carney, M.D. has appeared in this case.

7.  As of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, COVINGTON GYNECOLOGY, P.C. d/b/a COVINGTON OBSTETRICS AND GYNECOLOGY was and is a citizen of the State of Alabama for purposes of diversity jurisdiction because it is a professional corporation organized under the laws of the State of Alabama with its principal place of business at 115 Medical Park Dr., Andalusia, Covington County, Alabama 36420.  Covington Gynecology, P.C. d/b/a Covington Obstetrics and Gynecology has appeared in this case.

8. Upon information and belief, as of the filing of Plaintiffs' Original Complaint up to and including the date of the filing of this Amended Complaint, KNIGHT HEALTH HOLDINGS LLC d/b/a SCIONHEALTH is not a citizen of the State of Florida for purposes of diversity jurisdiction because none of its members are citizens of the State of Florida. Knight Health Holdings LLC d/b/a ScionHealth has appeared in this case.

9. ScionHealth does business in the State of Alabama as the owner of Andalusia Health. According to its website, ScionHealth is a national healthcare system of 94 hospital campuses. *See* https://www.scionhealth.com/. One of these hospitals is Andalusia Health.  ScionHealth holds itself out as an organization that directs and controls the health care provided at the hospitals in its system through collaboration on clinical care and the selection and development of health care providers.

10. ScionHealth further states on its website that "with a team of approximately 25,000 dedicated and compassionate healthcare professionals, we put our caregivers at the forefront of everything we do and every choice we make." *Id.*  The referenced "25,000 dedicated and compassionate health care professionals" are the health care providers at the hospitals in its system, including Andalusia Health in Alabama, which ScionHealth considers its "team." ScionHealth states that it is "focused on delivering the very best care for our communities through a commitment to innovation and investments in people and technology." *See* https://www.scionhealth.com/about-us.

11. ScionHealth represents that it works with and interacts with the hospitals and health care providers in its system, including Andalusia Health in Alabama, telling the public that it "empowers the hands that heal to do what they do best" and that its "present and future are rooted in our communities and caregivers, so we listen *and collaborate with them* to find

innovative    solutions    that    cultivate    a    positive    patient    experience." *See* https://www.scionhealth.com/about-us (emphasis added).  Moreover, ScionHealth holds itself out as an organization that provides its clinical caregivers, including those at Andalusia Health in Alabama,  resources to deliver "exceptional care:"

> ScionHealth is a highly reliable, clinically focused organization. Our clinical operations team strives to be leading innovators in specialty and community healthcare *while providing our caregivers with the resources needed to deliver exceptional care*.

*Id.*

12. Andalusia Health has the same expectation that it will collaborate with and receive resources from ScionHealth to care for its patients.  When ScionHealth purchased Andalusia Health in 2021, Andalusia Health's CEO stated, "our team looks forward to having more targeted resources and collaboration opportunities that will help us to serve our patients and communities in new ways."  *See* https://www.andalusiahealth.com/news/andalusia-health-joins-scionhealth.  ScionHealth's CEO confirmed this, saying "Our team looks forward to advancing innovative healthcare solutions, partnering with the community, and being a strong employer in Andalusia. We are eager to work with Andalusia Health's leaders, employees and physicians to explore new ways that we can improve the health of people across Andalusia." *Id.*  ScionHealth talks about itself, not Andalusia Health, as the "strong employer" in Andalusia.

13. ScionHealth tells the public that it is led by a team of executives who "are dedicated to providing our caregivers in the field with the resources they need to do what they do best, which is meeting our patients' needs."  *Id.*  It tells people interested in working for the organization:

> With a team of dedicated and compassionate healthcare professionals, we put our caregivers at the forefront of everything we do and every choice we make. How? *By providing them with tools, technology and resources that enable exceptional experiences for those we care for at every moment.*

See https://jobs.scionhealth.com/ (emphasis added).  Jobs at Andalusia Health are posted on the ScionHealth website.  ScionHealth provides employees, including those at Andalusia Health, with support for professional growth and development.  *Id.*

## JURISDICTION AND VENUE

14. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the Plaintiffs are citizens of Florida and no Defendants are citizens of Florida.  Additionally, the amount in controversy exceeds $75,000 exclusive of interest and costs.

15. Venue is proper in this the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b) because all but one of the Defendants reside in this District and because the events or omissions giving rise to Plaintiffs' claim occurred in this District.

## FACTUAL ALLEGATIONS

16. Erica Chandler was a patient of Lee Carney, M.D. at Covington OB/Gyn during her pregnancy with R.B.

17. Erica saw Dr. Carney on March 29, 2022, for a prenatal visit.  At that time, Dr. Carney ordered an ultrasound and noted that the fetus was in cephalic position.

18. Erica saw Dr. Carney again on April 4, 2022.  At that time, he did a vaginal exam (1 cm dilated, 50% effaced, and -2 station) but did not note the baby's position.  He wrote orders for admission at Andalusia Health for induction of labor at 2000 the next day, April 5, with a plan for induction by Cytotec and Pitocin.  Erica presented to Andalusia Health pursuant to Dr. Carney's orders the afternoon of April 5.

19. Electronic fetal monitoring on an external fetal monitor was started at the Hospital at 2337 on April 5. On admission to the labor and delivery unit, fetal heart tracings were reassuring and indicated a healthy, neurologically intact baby girl.

20. At 0107 on April 6, Elizabeth McAlpine, RN documented a vaginal exam: 1.5 cm dilated, 20% effaced, -4 station. She noted the cervix was firm and midposition. She also documented a vertex presentation and that membranes were intact. She noted a Bishop's score of 3, indicating an unfavorable cervix.

21. At 0142 Erica was given 50 mcg of Cytotec orally to begin the induction process. Nurse McAlpine noted a Category I strip at 0144 and again periodically throughout her shift. However, from the start, there are multiple periods of time during which the external fetal monitor is not properly recording the fetal heart rate: 2337-2341 and 2354-2359 on April 5 and 0020-0026, 0040-0049, 0053-0101, 0140-0149, 0243-0318, 0323-0339, 0408-0411, 0447-0506, 0511-0521, 0538-0604 and 0634-0656 on April 6.

22. At 0553, Nurse McAlpine administered another 50 mcg of Cytotec to Erica.

23. At or about 0714 on April 6, Laverness Brand, RN took over care of Erica and R.B. She adjusted the external fetal monitor at that time and at multiple other times during her shift, but the monitor continued to fail to properly record the fetal heart rate for significant periods of time during her shift: 0705-0742, 0831-0838, 0845-0859, 1014-1022, 1030-1052, 1139-1227, 1236-1241, 1251-1308, 1326-1412 and 1512 through the end of fetal monitoring. Additionally, Nurse Brand documented a Category II strip at 0714 due to the presence of variable decelerations, and it remained Category II throughout her shift. However, at no time during her shift did Nurse Brand place a fetal scalp electrode or ask the physician if one could be placed.

24. Dr. Carney was bedside at 0926. His plan was to rupture Erica's membranes after a recently applied suppository of Dulcolax took effect.

25. At 0953 Brand began administering Pitocin at 2 ml per hour through Erica's IV.

26. At 1031, Dr. Carney did a vaginal exam, finding Erica to be 1 cm dilated, and artificially ruptured the membranes. Amniotic fluid was clear, a moderate amount, with no odor. Effacement and station were not documented for this exam.

27. At 1100, Pitocin was increased to 4 ml per hour.

28. At 1153 Nurse Brand did a vaginal exam: 1 cm dilated, 25% effaced and -3 station.

29. At 1157 Dr. Carney was on the unit and reviewed the strip, and gave no new orders.

30. At 1200 Pitocin was increased to 6 ml per hour.

31. At 1330 Erica requested an epidural.

32. At 1354 Nurse Brand did a vaginal exam: 2 cm dilated, 50% effaced, -3 station.  She also documented a cephalic presentation.

33. At 1404 Willie Furr, CRNA, placed the catheter for the epidural, with the test dose administered at 1406 and loading dose administered at 1413.

34. At 1519, Nurse Brand did another vaginal exam: 4 cm dilated, 50% effaced and -2 station. At this time, she documented that the baby was in breech fetal position. Dr. Carney was informed of the vaginal exam and he issued no new orders.

35. At 1533 Erica requested a second epidural (the original epidural was effective only on her right side).  CRNA Furr came to place the second epidural at approximately 1553.  The test dose was administered at 1556.

36. At 1604 CRNA Furr started the epidural pump for the second epidural.  At that same time, Erica "grasped [Nurse Brand's] arm, stating, 'something just happened down there. Lots of pressure, I feel like the baby is coming."

37. At 1608 Nurse Brand did a vaginal exam.  At that time Erica was 10 cm dilated, 100% effaced and at -1 station.  She also documented again that the baby was in breech presentation.  She requested a second vaginal exam by Nurse Joan Mills.  Nurse Mills did a vaginal exam and confirmed Nurse Brand's findings, including that the baby was in breech presentation.

38. At 1610 Nurse Mills remained bedside, trying to obtain a fetal heart tracing.  Nurse Brand documented that the fetal heart rate was audible but was not tracing.  Erica was placed in a left lateral position (1608) and then a right lateral position (1610).

39. At 1612, Dr. Carney was notified that Erica was complete, that the baby was in breech presentation and of the inability of the nursing staff to trace the fetal heart rate.  He requested that an ultrasound machine be placed at bedside.  Nurse Mills remained at bedside, changing mat positions and trying to obtain a fetal heart rate tracing.

40. At 1614 the Pitocin was discontinued.  Another nurse, Linda Dewrell, RN, came to the bedside to assist Nurse Mills with changing mat positions.  A lactated ringer bolus was in progress and CRNA Furr was notified of the breech presentation and asked to remain in the unit.

41. At 1616 Nurse Brand advised Erica about the breech presentation, the difficultly tracing the fetal heart rate and the need for a stat cesarean section delivery.

42. At 1620 Erica was placed in a hands and knees position.  Nurses Brand, Mills and Dewrell remained bedside.  Nurses Mills and Dewrell continued to assist with mat position and in attempting to obtain a fetal heart rate tracing.  Nurse Brand noted that the audible fetal heart rate at this time was in the 90s.

43. At 1624 Nurse Brand noted that Dr. Carney was bedside preparing for an ultrasound.  At 1626 she noted that Dr. Carney did a vaginal exam and confirmed breech position.

44. At 1628 Nurse Brand noted that the ultrasound was in progress and the fetal heart rate was in the 90s per Dr. Carney.

45. At 1633 Erica was transported to the operating room for a cesarean section due to nonreassuring fetal status and breech position.  Anesthesia, administered by CRNA Furr, began at 1637.  Surgery began at 1642.  Dr. Carney performed a low-transverse c-section and, according to Dr. Carney's operative note, "the infant was delivered double footling" at 1645 (however, in the delivery summary, nursing staff documented that the baby was delivered in frank breech position).  Personnel involved in the surgery were Nurse Brand and Anslee Jeffcoat, RN (circulators) and Leeann Caanant and Samantha Odom (scrub nurses).  Also present were Nurses Mills and Dewrell and Ashley Foltz RT.

46. Dr. Carney's operative note states that after delivery, R.B. was bulb suctioned, the cord was doubly clamped and cut, and she was passed off to the awaiting nurse.  Cord blood was collected, and the placenta was removed.  The delivery note states that a cesarean section was performed due to nonreassuring fetal status and breech presentation.  Nurse Dewrell noted that R.B. weighed 6 pounds, 15 ounces at birth and was delivered in critical condition.

47. Immediately after delivery (at 1645) Nurse Dewrell took R.B. to the pre-heated warmer in the OR, her mouth and nose were suctioned and Nurse Dewrell noted that she had no spontaneous respiratory effort.  Positive pressure ventilation (PPV) was initiated by RT Foltz.  A neonatal code blue was called by Nurse Dewrell, also at 1645.

48. At 1646 R.B.'s 1 minute APGAR score was two with a heart rate greater than 100, no respiration, flaccid tone, no reflexes and color blue/pale. PPV/NCPAP continued.   Chest

compressions were also documented at this time and at 1650 (the medical records do not state who documented this), but Nurse Dewrell documented that chest compressions began at 1654.

49. At 1648 Nurse Dewrell noted that there was still no spontaneous respiratory effort.

50. At 1650 R.B.'s five-minute APGAR score remained 2 (heart rate greater than 100, no respiration, flaccid tone, no reflexes and color blue/pale), showing no improvement. Resuscitation efforts (PPV/NCPAP and, according to one record, chest compressions) continued.

51. At 1652 Nurse Brand documented that she spoke with Dr. Bhagwan Bang and told him about the delivery and bagging the baby, and that he was *en route* and gave orders to turn the warmer off for cooling. This was the first time a neonatal provider was notified about the breech presentation or nonreassuring fetal status that led to cesarean delivery, or about the baby's status after delivery.

52. Andalusia Health was on notice before this delivery that it did not have neonatal providers on its medical staff who were able to provide timely care to newborns requiring resuscitation and intubation. Dr. Bang received a speeding ticket in 2015 when he was racing to the Hospital to save a newborn who was not breathing. The charges were subsequently dropped due to the circumstances, but Dr. Bang stated in a media interview with WSFA 12 that "There are times when you need a skilled physician there. Obviously, minutes and seconds matter…" In that case, Dr. Bang was delayed from arriving to the Hospital because he was stopped by the police. The baby died two days later.

53. At 1654 R.B.'s heart rate decreased to 52 bpm and Nurse Dewrell noted that chest compressions began.

54. At 1655 R.B.'s ten-minute APGAR score was 1, with a heart rate less than 100, no respiratory effort, flaccid tone, no reflex and blue color.  She was intubated at that time, at 16 minutes of life, by CRNA Furr (who had been providing anesthesia to Erica for her c-section) on the second attempt.   She was given epinephrine via the endotracheal tube at 1656 and at 1657 her heart rate had come up to 154 bpm, and chest compressions were discontinued.

55. At 1700 R.B.'s 15-minute APGAR score was 3 (heart rate over 100, no respiratory effort, flaccid tone, no reflex, body pink and extremities blue).  Dr. Bang was noted to be present at that time.

56. At 1710 Nurse Dewrell noted that R.B. was placed on a ventilator to be transferred to Sacred Heart in Pensacola.  Her endotracheal intubation remained in place, and she was in the initial stage of being cooled.  Neonatal care continued under the direction of Dr. Bang until R.B. was discharged.  Dr. Bang noted that R.B. started jerking both upper limbs and thus was given Phenobarbital.  The loading dose of Phenobarbital was administered at 1820.

57. Arterial blood gas drawn at 1830 had critical results, with a pH of 7.07, pCO2 of 16, pO2 of 261 and base excess of -23.6.

58. At 2255, R.B. was transferred to Ascension Sacred Heart Pensacola.  She was diagnosed with severe metabolic acidosis, hypoglycemia, severe hypoxic ischemic encephalopathy (HIE), and her initial EEG showed no definitive cerebral activity with a burst suppression pattern.  She underwent therapeutic hypothermia.  A repeat EEG on April 13 also had a burst suppression pattern.

59. On April 11, 2022, five days after the breech birth of R.B., Nurse Brand returned to the chart and entered a "correction" to her April 6 note entered at 1519 stating that she "realized error

in documentation when reviewing chart.   Charted 4/6/22 at 1519, charted breech in error, should have read cephalic.  Charting 4/6/22 at 1519 and this now per self, L Brand RN."

60. R.B. was discharged from Sacred Heart on August 10, 2022.  Her treating neurologist noted that a "very poor development outcome" was expected.  He noted that her initial MRI on April 12 confirmed HIE and a repeat MRI on August 8 showed volume loss.  She had consistently poor neurological exams during her hospitalization and had no major clinical changes or improvements.  The staff unsuccessfully tried to wean her off the ventilator, and she had to be reintubated.  By the time of discharge, she was showing increasing spasticity.

61.  R.B. was released to home care with a ventilator, tracheostomy, feeding pump, gastrostomy feeds, oxygen and suction. She requires 24-hour care, use of a home ventilator, and uses a feeding tube. She will require a lifetime of intensive medical and attendant care.

**DUTIES**

62. At all material times, Andalusia Health was a legal entity that employed or was otherwise responsible for the acts and/or omissions of its agents, ostensible agents, servants, employees, and/or representatives, including but not limited to Elizabeth McAlpine, RN, Laverness Brand, RN,  Joan Mills, RN and Linda Dewrell, RN, under the provisions of *respondeat superior,* ostensible agency, apparent agency, actual agency, and/or other agency principles and that represented to the Plaintiffs and the public at large that Carney, as a physician with Covington OB/Gyn with privileges to practice medicine at the Hospital, was licensed as a physician to practice medicine in the State of Alabama and was a competent medical doctor.  Andalusia Health also represented to the Plaintiffs and the public at large that the nurses and other staff involved in the care of Erica and R.B. were duly licensed, competent, nurses, physicians' assistants, and/or technologists.

63. At all material times, a healthcare provider-patient relationship existed between Andalusia Health and Plaintiffs.

64. At all material times, ScionHealth was Andalusia Health's direct or ultimate parent corporation and as such was a legal entity that employed or was otherwise responsible for the acts and/or omissions of Andalusia Health's agents, ostensible agents, servants, employees, and/or representatives, including but not limited to Elizabeth McAlpine, RN, Laverness Brand, RN, Joan Mills, RN and Linda Dewrell, RN, under the provisions of *respondeat superior,* ostensible agency, apparent agency, actual agency, and/or other agency principles and that, directly or indirectly, permitted Andalusia Health to represent to the Plaintiffs and the public at large that Carney, as a physician with Covington OB/Gyn with privileges to practice medicine at the Hospital, was licensed as a physician to practice medicine in the State of Alabama and was a competent medical doctor.  ScionHealth, directly or indirectly, also permitted Adalusia Health to represent to the Plaintiffs and the public at large that the nurses and other staff involved in the care of Erica and R.B. were duly licensed, competent, nurses, physicians' assistants, and/or technologists.  Upon information and belief, including representations made to the public on its website, ScionHealth exercises direction and control over the hospitals in its organization, including Andalusia Health, so that care provided across its system is uniform and "exceptional."

65. At all material times, a healthcare provider-patient relationship existed between ScionHealth and Plaintiffs.

66. At all material times, Defendant Brand was a licensed registered nurse licensed to practice nursing in the State of Alabama, who represented to Plaintiffs and the public at large that she was a duly licensed, competent registered nurse.

14

67. At all times material hereto, a nurse-patient relationship existed between Defendant Brand and Plaintiffs.

68. At all material times, Defendant Mills was a licensed registered nurse licensed to practice nursing in the State of Alabama, who represented to Plaintiffs and the public at large that she was a duly licensed, competent registered nurse.

69. At all times material hereto, a nurse-patient relationship existed between Defendant Mills and Plaintiffs.

70. At all material times, Defendant Dewrell was a licensed registered nurse licensed to practice nursing in the State of Alabama, who represented to Plaintiffs and the public at large that she was a duly licensed, competent registered nurse.

71. At all times material hereto, a nurse-patient relationship existed between Defendant Dewrell and Plaintiffs.

72. At all material times, Defendant Carney was a physician licensed to practice medicine in the State of Alabama, who represented to Plaintiffs and the public at large that he was a duly licensed, competent medical doctor.

73. At all material times, a physician-patient relationship existed between Defendant Carney and Plaintiffs.

74. At all material times, Covington OB/Gyn was a legal entity employed or was otherwise responsible for the acts and/or omissions of its agents, ostensible agents, servants, employees, and/or representatives, including but not limited to Lee Carney, MD, under the provisions of *respondeat superior*, ostensible agency, apparent agency, actual agency, and/or other agency principles and that represented to the Plaintiffs and the public at large that Carney and the other physicians in its practice group were duly licensed, competent medical doctors.

75. At all material times, a physician-patient relationship existed between Defendant Covington OB/Gyn and Plaintiffs.

## CLAIMS AGAINST DEFENDANTS

### A.  Community Hospital of Andalusia, LLC d/b/a Andalusia Health

76. Andalusia Health was responsible for the acts and/or omissions of its agents, ostensible agents, servants, employees, and/or representatives under the provisions of *respondeat superior*, ostensible agency, apparent agency, actual agency, and/or other agency principles.

77. Andalusia Health, by and through its agents, employees or borrowed servants, specifically the labor and delivery and neonatal nursing staff, owed a duty of care to Plaintiffs in providing treatment to Plaintiffs from April 6, 2022, through the delivery and resuscitation of R.B. on April 7, 2022.  Andalusia Health breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant failed to use ordinary care and failed to use the reasonable care, skill and diligence as other similarly situated hospitals usually follow in the same or similar circumstances, and as such, was negligent as that term is defined by law in Alabama, including, but not limited to, the following acts and/or omissions:

    a.  Failing to accurately assess the position of the fetus on April 6, 2022 at 0107 (Nurse McAlpine) and again at 1153 and 1354 (Nurse Brand);

    b.  Failing to request an ultrasound to verify the position of the fetus prior to initiating induction of labor at 0142 on April 6, 2022, particularly given the fact that the baby was, at that time, at a -4 station and Erica was only 1.5 cm dilated and 20% effaced (Nurse McAlpine);

    c.  Failing to recognize a breech presentation upon Erica's admission to the Hospital (Nurse McAlpine) or at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

    d.  Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurses McAlpine and Brand);

e.  Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

f.  Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

g.  Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

h.  Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

i.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

j.  Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

k.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

l.  Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

m.  Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.  It is Plaintiffs' belief and understanding that Dr. Carney was the physician responsible for Erica and her unborn child, R.B.  However, Plaintiffs will inquire as to the communications between Andalusia Health nurses and any other physicians related to the care and treatment of Plaintiffs.

78. Andalusia Health additionally and/or in the alternative is independently liable for its own acts and/or omissions which constitute negligence and breached or failed to comply with the standard of care with respect to Plaintiffs. Andalusia Health breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant failed to use ordinary care and

failed to use the reasonable care, skill and diligence as other similarly situated hospitals usually

follow in the same or similar circumstances, and as such, was negligent as that term is defined

by law in Alabama, including, but not limited to, the following acts and/or omissions:

    a. Failure to formulate, implement, and/or enforce clear and appropriate policies and procedures;

    b. Failure to properly train and evaluate staff;

    c. Failure to supervise staff;

    d. Failing to have adequate policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol;

    e. Other acts/omissions anticipated to be discovered; and

    f. Otherwise being negligent in the care and treatment of Erica and R.B.

79. Andalusia Health, by and through its agents, vice principals, employees and/or borrowed

servants, breached or failed to comply with the standard of care with respect to Plaintiffs in

that Defendant acting through its agents, employees, or representatives had a duty of care to

Plaintiffs to exercise ordinary care, to use the reasonable care, skill and diligence as other

similarly situated hospitals usually follow in same or similar circumstances, in the formulation,

implementation and/or enforcement of policies and procedures relevant to a patient during her

pregnancy and in labor and delivery and relevant to induction of labor, determination of fetal

position and fetal distress, and resuscitation of newborns.

80. Andalusia Health is liable for all of the negligent acts and/or omissions of its various agents,

employees, vice principals, employees and/or borrowed servants pursuant to the doctrine of

*respondeat superior,* as each was acting in the course and scope of their employment with

Andalusia Health at all material times. This conduct breached or failed to comply with the

standard of care with respect to Plaintiffs in that the conduct created an extreme risk of serious

injury to Plaintiffs and subjected them to cruel and unjust hardship. Defendants were actually and subjectively aware of the extreme risk and hardship created by their conduct, but nevertheless proceeded in such conduct with conscious indifference to the rights, safety, and welfare of Plaintiffs. In addition, Andalusia Health, acting through its agents, employees, or representatives, had a duty of care to Plaintiffs to not be malicious or willfully act in:

    a. Authorizing the doing and the manner of the any act;

    b. Employing an unfit agent in a reckless manner;

    c. Employing an agent in a managerial capacity who acted beyond the scope of employment; and/or

    d. Ratifying and/or approving the malicious and/or willful acts of a manager of the hospital.

81. The above-mentioned acts and/or omissions of Defendant Andalusia Health were singularly and/or cumulatively a proximate cause of the occurrence in question, and the damages alleged by the Plaintiffs in this lawsuit.

**B. Knight Health Holdings LLC d/b/a ScionHealth**

82. ScionHealth was responsible for the acts and/or omissions of its agents, ostensible agents, servants, employees, and/or representatives under the provisions of *respondeat superior*, ostensible agency, apparent agency, actual agency, and/or other agency principles.

83. ScionHealth, by and through its agents, employees or borrowed servants, specifically the labor and delivery and neonatal nursing staff at Andalusia Health, owed a duty of care to Plaintiffs in providing treatment to Plaintiffs from April 6, 2022 through the delivery and resuscitation of R.B. on April 7, 2022. ScionHealth breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant failed to use ordinary care and failed to use the reasonable care, skill and diligence as other similarly situated hospital systems usually follow

in the same or similar circumstances, and as such, was negligent as that term is defined by law in Alabama, including, but not limited to, the following acts and/or omissions:

a. Failing to accurately assess the position of the fetus on April 6, 2022 at 0107 (Nurse McAlpine) and again at 1153 and 1354 (Nurse Brand);

b. Failing to request an ultrasound to verify the position of the fetus prior to initiating induction of labor at 0142 on April 6, 2022, particularly given the fact that the baby was, at that time, at a -4 station and Erica was only 1.5 cm dilated and 20% effaced (Nurse McAlpine);

c. Failing to recognize a breech presentation upon Erica's admission to the Hospital (Nurse McAlpine) or at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

d. Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurses McAlpine and Brand);

e. Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

f. Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

g. Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

h. Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

i. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

j. Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

k. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as

Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

l.  Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

m.  Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.  It is Plaintiffs' belief and understanding that Dr. Carney was the physician responsible for Erica and her unborn child, R.B..  However, Plaintiffs will inquire as to the communications between Andalusia Health nurses and any other physicians related to the care and treatment of Plaintiffs.

84. ScionHealth, by and through its agents, employees, or borrowed servants, specifically the administrative staff at Defendant Andalusia Health, its subsidiary, and/or by its own implementation of policies and procedures to ensure system-wide standardization practices, collaboration, resources and clinical quality programs as it represents to the public on its website, that provide its "caregivers in the field with the resources they need to do what they do best, which is meeting [its] patients' needs," additionally and/or in the alternative is independently liable for its own acts and/or omissions which constitute negligence and breached or failed to comply with the standard of care with respect to Plaintiffs.  ScionHealth breached or failed to comply with the standard of care with respect to Plaintiffs in that it failed to use ordinary care and failed to use the reasonable care, skill and diligence as other similarly situated hospital systems usually follow in the same or similar circumstances, and as such, was negligent as that term is defined by law in Alabama, including, but not limited to, the following acts and/or omissions:

a.  Failure to formulate, implement, and/or enforce clear and appropriate system-wide policies and procedures;

b.  Failure to ensure that Adalusia Health formulated, implemented, and/or enforced clear and appropriate policies and procedures;

    c.   Failure to properly train and evaluate staff at the hospitals in its system, including Andalusia Health;

    d.   Failure to ensure that Andalusia Health properly trained and evaluated staff;

    e.   Failure to supervise administrative and management staff at the hospitals in its system, including Andalusia Health;

    f.   Failure to ensure that Andalusia Health administration and management properly supervised staff;

    g.   Failing to have adequate system-wide policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol;

    h.   Failing to ensure that Andalusia Health had adequate policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol;

    i.   Other acts/omissions anticipated to be discovered; and

    j.   Otherwise being negligent in the care and treatment of Erica and R.B.

85. ScionHealth, by and through its agents, vice principals, employees and/or borrowed servants, breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant acting through its agents, employees, or representatives had a duty of care to Plaintiffs to exercise ordinary care, to use the reasonable care, skill and diligence as other similarly situated hospital systems usually follow in same or similar circumstances, in the formulation, implementation and/or enforcement of policies and procedures relevant to a patient during her pregnancy and in labor and delivery and relevant to induction of labor, determination of fetal position and fetal distress and resuscitation of newborns.

86. ScionHealth is liable for all of the negligent acts and/or omissions of its various agents, employees, vice principals, employees and/or borrowed servants pursuant to the doctrine of *respondeat superior,* as each was acting in the course and scope of their employment with ScionHealth at all material times.  This conduct breached or failed to comply with the standard

of care with respect to Plaintiffs in that the conduct created an extreme risk of serious injury to Plaintiffs and subjected them to cruel and unjust hardship.  Defendants were actually and subjectively aware of the extreme risk and hardship created by their conduct, but nevertheless proceeded in such conduct with conscious indifference to the rights, safety, and welfare of Plaintiffs.  In addition, ScionHealth, acting through its agents, employees, or representatives, had a duty of care to Plaintiffs to not be malicious or willfully act in:

     k.   Authorizing the doing and the manner of the any act;

     l.   Employing an unfit agent in a reckless manner;

     m.   Employing an agent in a managerial capacity who acted beyond the scope of employment; and/or

     n.   Ratifying and/or approving the malicious and/or willful acts of a manager of the hospital.

87. The above-mentioned acts and/or omissions of Defendant ScionHealth were singularly and/or cumulatively a proximate cause of the occurrence in question, and the damages alleged by the Plaintiffs in this lawsuit.

**C.  Laverness Brand, RN, Joan Mills, R.N. and Linda Dewrell, R.N.**

88. Plaintiffs believe that at the time of care in this case, Defendants Brand, Mills and Dewrell were employees or agents of Andalusia Health.  In the course of rendering nursing care and treatment of Plaintiffs, Nurses Brand, Mills and Dewrell had a duty of care to Plaintiffs and breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendants failed to exercise that level of reasonable care, skill, and diligence as other similarly situated registered nurses in the same general line of practice usually follow in the same or similar circumstances.  Nurses Brand, Mills and Dewrell committed acts and/or omissions which constitute negligence as that term is defined by law, including, but not limited to, the following acts and/or omissions:

a.  Failing to accurately assess the position of the fetus on April 6, 2022 at 1153 and 1354 (Nurse Brand);

b.  Failing to recognize a breech presentation at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

c.  Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurse Brand);

d.  Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

e.  Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

f.  Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

g.  Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

h.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

i.  Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

j.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

k.  Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

l.  Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.

24

### D.  Lee Carney, M.D.

89. Defendant Carney, in the course of rendering medical care and treatment to Plaintiffs, owed a duty of care to Plaintiffs and breached or failed to comply with the standard of care as to the Plaintiffs by failing to exercise the level of reasonable care, skill, and diligence as other similarly situated physicians/obstetricians in the same general line of practice usually follow in the same or similar circumstances.  Defendant Carney committed acts and/or omissions which constitute negligence as that term is defined by law, including, but not limited to, the following acts and/or omissions:

     a.  Ordering induction of labor without accurately verifying the position of the fetus, failing to discontinue induction at 1031 when he should have discovered that the fetus was in breech position when breaking Erica's membranes, and failing to discontinue induction when he was notified that the fetus was in breech position;

     b.  Failing to adequately assess R.B.'s fetal heart rate on the fetal monitor, either at bedside or remotely, and failure to recognize the inability of the monitor to consistently trace R.B.'s heart rate;

     c.  Failing to place or order placement of a fetal scalp electrode given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate throughout labor induction and also given the presence of a Category II tracing after 0714 on April 6, 2022;

     d.  Failing to recognize that R.B. was in breech position at 1031 on April 6, 2022, when he ruptured Erica's membranes and to order a cesarean delivery at that time;

     e.  Failing to come to assess Erica at or around 1519 on April 6, 2022, when Nurse Brand reported Erica's 1519 vaginal exam to him, which she documented as finding R.B. in a breech position, and to order a cesarean delivery after confirming the breech position;

     f.  Failing to immediately order a STAT cesarean delivery at 1612 on April 6, 2022, when he was notified (again) that R.B. was in breech position and that the nursing staff could not obtain a fetal heart rate, rather than wasting time obtaining an ultrasound;

     g.  Failing to notify or order the nursing staff to notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. immediately upon learning that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

h. Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.

90. The above-mentioned acts and/or omissions of Defendant Carney were singularly and/or cumulatively a proximate cause of the occurrence in question, and the damages alleged by the Plaintiffs.  The conduct of Defendant Carney as stated above created an extreme degree of risk of serious injury to Plaintiffs and subjected Plaintiffs to cruel and unjust hardship.  By failing to timely and accurately determine that R.B. was in breech position, and failing to timely deliver her, Dr. Carney created an extreme degree of risk which caused devastating brain injuries to R.B.  Defendant Carney breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant was actually and subjectively aware of the extreme degree of risk and hardship created by his conduct, but nevertheless proceeded in such conduct with conscious indifference to the rights, safety, and welfare of Plaintiffs.

**E.  Covington Gynecology, P.C. d/b/a Covington Obstetrics and Gynecology**

91. Covington OB/Gyn was responsible for the acts and/or omissions of its agents, ostensible agents, servants, employees, and/or representatives under the provisions of respondeat superior, ostensible agency, apparent agency, actual agency, and/or other agency principles.

92. Covington OB/Gyn, by and through their agents, employees or borrowed servants, specifically Lee Carney, M.D. owed a duty of care to Plaintiffs in providing treatment to Plaintiffs from April 6, 2022 through the delivery on April 7, 2022.  Covington OB/Gyn breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant failed to use ordinary care and failed to use the reasonable care, skill and diligence as other similarly situated obstetrical medical professional corporations usually follow in the same or similar circumstances, and as such, was negligent as that term is defined by law in Alabama, including, but not limited to, the following acts and/or omissions:

a. Ordering induction of labor without accurately verifying the position of the fetus, failing to discontinue induction at 1031 when he should have discovered that the fetus was in breech position when breaking Erica's membranes, and failing to discontinue induction when he was notified that the fetus was in breech position;

b. Failing to adequately assess R.B.'s fetal heart rate on the fetal monitor, either at bedside or remotely, and failure to recognize the inability of the monitor to consistently trace R.B.'s heart rate;

c. Failing to place or order placement of a fetal scalp electrode given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate throughout labor induction and also given the presence of a Category II tracing after 0714 on April 6, 2022;

d. Failing to recognize that R.B. was in breech position at 1031 on April 6, 2022, when he ruptured Erica's membranes and to order a cesarean delivery at that time;

e. Failing to come to assess Erica at or around 1519 on April 6, 2022, when Nurse Brand reported Erica's 1519 vaginal exam to him, which she documented as finding R.B. in a breech position, and to order a cesarean delivery after confirming the breech position;

f. Failing to immediately order a STAT cesarean delivery at 1612 on April 6, 2022, when he was notified (again) that R.B. was in breech position and that the nursing staff could not obtain a fetal heart rate, rather than wasting time obtaining an ultrasound;

g. Failing to notify or order the nursing staff to notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. immediately upon learning that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

h. Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.

93. Covington OB/Gyn additionally and/or in the alternative is independently liable for its own acts and/or omissions which constitute negligence and breached or failed to comply with the standard of care with respect to Plaintiffs. Covington OB/Gyn breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant failed to use ordinary care and failed to use the reasonable care, skill and diligence as other similarly situated obstetrical medical professional corporations usually follow in the same or similar circumstances, and as

27

such, was negligent as that term is defined by law in Alabama, including, but not limited to, the following acts and/or omissions:

    a.   Failure to formulate, implement, and/or enforce clear and appropriate policies and procedures;

    b.   Failure to properly train and evaluate its physicians;

    c.   Failure to supervise its physicians; and

    d.   Other acts/omissions anticipated to be discovered.

94. Covington OB/Gyn, by and through its agents, vice principals, employees and/or borrowed servants breached or failed to comply with the standard of care with respect to Plaintiffs in that Defendant acting through its agents, employees, or representatives, specifically, Dr. Carney, had a duty of care to Plaintiffs to exercise ordinary care, to use the reasonable care, skill and diligence as other similarly situated obstetrical medical professional corporations usually follow in same or similar circumstances, in the formulation, implementation and/or enforcement of policies and procedures relevant to a patient during her pregnancy and in labor and delivery and relevant to induction of labor, determination of fetal position and fetal distress.

95. Covington OB/Gyn is liable for all of the negligent acts and/or omissions of its various agents, employees, vice principals, employees and/or borrowed servants pursuant to the doctrine of *respondeat superior,* as each was acting in the course and scope of their employment with Covington OB/Gyn at all material times.  This conduct breached or failed to comply with the standard of care with respect to Plaintiffs in that the conduct created an extreme risk of serious injury to Plaintiffs and subjected them to cruel and unjust hardship.  Defendants were actually and subjectively aware of the extreme risk and hardship created by their conduct, but nevertheless proceeded in such conduct with conscious indifference to the rights, safety, and

welfare of Plaintiffs.  In addition, Covington OB/Gyn, acting through its agents, employees, or representatives, had a duty of care to Plaintiffs to not be malicious or willfully act in:

    a.  Authorizing the doing and the manner of the any act;

    b.  Employing an unfit agent in a reckless manner;

    c.  Employing an agent in a managerial capacity who acted beyond the scope of employment; and/or

    d.  Ratifying and/or approving the malicious and/or willful acts of a manager of the hospital.

96. The above-mentioned acts and/or omissions of Defendant Covington OB/Gyn were singularly and/or cumulatively a proximate cause of the occurrence in question, and the damages alleged by the Plaintiffs in this lawsuit.

## CAUSES OF ACTION

### A.  COUNT ONE – NEGLIGENCE

97. Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety.  All Defendants' conduct, separately and severally, was negligent as to Plaintiffs as follows:

98. Defendant Adalusia Health's care of Plaintiffs was negligent because of the following failures:

    a.  Failing to accurately assess the position of the fetus on April 6, 2022 at 0107 (Nurse McAlpine) and again at 1153 and 1354 (Nurse Brand);

    b.  Failing to request an ultrasound to verify the position of the fetus prior to initiating induction of labor at 0142 on April 6, 2022, particularly given the fact that the baby was, at that time, at a -4 station and Erica was only 1.5 cm dilated and 20% effaced (Nurse McAlpine);

    c.  Failing to recognize a breech presentation upon Erica's admission to the Hospital (Nurse McAlpine) or at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

    d.  Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurses McAlpine and Brand);

e.  Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

f.  Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

g.  Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

h.  Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

i.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

j.  Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

k.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

l.  Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618;

m.  Failure to formulate, implement, and/or enforce clear and appropriate policies and procedures;

n.  Failure to properly train and evaluate staff;

o.  Failure to supervise staff;

p.  Failing to have adequate policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol; and

q.  Other acts/omissions anticipated to be discovered throughout the deposition and discovery process. It is Plaintiffs' belief and understanding that Dr. Carney was

the physician responsible for Erica and her unborn child, R.B.  However, Plaintiffs will inquire as to the communications between Andalusia Health nurses and any other physicians related to the care and treatment of Plaintiffs.

99. Defendant ScionHealth's care of Plaintiffs was negligent because of the following failures:

    a. Failing to accurately assess the position of the fetus on April 6, 2022 at 0107 (Nurse McAlpine) and again at 1153 and 1354 (Nurse Brand);

    b. Failing to request an ultrasound to verify the position of the fetus prior to initiating induction of labor at 0142 on April 6, 2022, particularly given the fact that the baby was, at that time, at a -4 station and Erica was only 1.5 cm dilated and 20% effaced (Nurse McAlpine);

    c. Failing to recognize a breech presentation upon Erica's admission to the Hospital (Nurse McAlpine) or at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

    d. Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurses McAlpine and Brand);

    e. Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

    f. Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

    g. Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

    h. Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

    i. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

    j. Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

    k. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if

necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

l. Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

m. Failure to formulate, implement, and/or enforce clear and appropriate system-wide policies and procedures;

n. Failure to ensure that Adalusia Health formulated, implemented, and/or enforced clear and appropriate policies and procedures;

o. Failure to properly train and evaluate staff at the hospitals in its system, including Andalusia Health;

p. Failure to ensure that Andalusia Health properly trained and evaluated staff;

q. Failure to supervise administrative and management staff at the hospitals in its system, including Andalusia Health;

r. Failure to ensure that Andalusia Health administration and management properly supervised staff;

s. Failing to have adequate system-wide policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol;

t.

u. Failing to ensure that Andalusia Health had adequate policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol;

v. Other acts/omissions anticipated to be discovered; and

w. Otherwise being negligent in the care and treatment of Erica and R.B.

100.   Defendants Laverness Brand, R.N., Joan Mills, R.N. and Linda Dewrell, R.N.'s care of Plaintiffs was negligent because of the following failures:

a. Failing to accurately assess the position of the fetus on April 6, 2022 at 1153 and 1354 (Nurse Brand);

b. Failing to recognize a breech presentation at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

c. Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurse Brand);

d. Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

e. Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

f. Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

g. Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

h. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

i. Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

j. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

k. Failing to notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. immediately upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

l. Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.

101. Defendant Lee Carney, M.D.'s care of Plaintiffs was negligent because of the following failures:

33

a.   Ordering induction of labor without accurately verifying the position of the fetus, failing to discontinue induction at 1031 when he should have discovered that the fetus was in breech position when breaking Erica's membranes, and failing to discontinue induction when he was notified that the fetus was in breech position;

b.   Failing to adequately assess R.B.'s fetal heart rate on the fetal monitor, either at bedside or remotely, and failure to recognize the inability of the monitor to consistently trace R.B.'s heart rate;

c.   Failing to place or order placement of a fetal scalp electrode given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate throughout labor induction and also given the presence of a Category II tracing after 0714 on April 6, 2022;

d.   Failing to recognize that R.B. was in breech position at 1031 on April 6, 2022, when he ruptured Erica's membranes and to order a cesarean delivery at that time;

e.   Failing to come to assess Erica at or around 1519 on April 6, 2022, when Nurse Brand reported Erica's 1519 vaginal exam to him, which she documented as finding R.B. in a breech position, and to order a cesarean delivery after confirming the breech position;

f.   Failing to immediately order a STAT cesarean delivery at 1612 on April 6, 2022, when he was notified (again) that R.B. was in breech position and that the nursing staff could not obtain a fetal heart rate, rather than wasting time obtaining an ultrasound;

g.   Failing to notify or order the nursing staff to notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. immediately upon learning that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

h.   Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.

102.   Defendant Covington OB/Gyn's care of Plaintiffs was negligent because of the following failures:

a.   Ordering induction of labor without accurately verifying the position of the fetus, failing to discontinue induction at 1031 when he should have discovered that the fetus was in breech position when breaking Erica's membranes, and failing to discontinue induction when he was notified that the fetus was in breech position;

b.   Failing to adequately assess R.B.'s fetal heart rate on the fetal monitor, either at bedside or remotely, and failure to recognize the inability of the monitor to consistently trace R.B.'s heart rate;

c. Failing to place or order placement of a fetal scalp electrode given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate throughout labor induction and also given the presence of a Category II tracing after 0714 on April 6, 2022;

d. Failing to recognize that R.B. was in breech position at 1031 on April 6, 2022, when he ruptured Erica's membranes and to order a cesarean delivery at that time;

e. Failing to come to assess Erica at or around 1519 on April 6, 2022, when Nurse Brand reported Erica's 1519 vaginal exam to him, which she documented as finding R.B. in a breech position, and to order a cesarean delivery after confirming the breech position;

f. Failing to immediately order a STAT cesarean delivery at 1612 on April 6, 2022, when he was notified (again) that R.B. was in breech position and that the nursing staff could not obtain a fetal heart rate, rather than wasting time obtaining an ultrasound;

g. Failing to notify or order the nursing staff to notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. immediately upon learning that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618;

h. Failure to formulate, implement, and/or enforce clear and appropriate policies and procedures;

i. Failure to properly train and evaluate its physicians;

j. Failure to supervise its physicians; and

k. Other acts/omissions anticipated to be discovered.

103. **THEREFORE**, Plaintiffs pray that a jury be selected to hear this case and render a verdict for Plaintiffs against Defendants for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by Plaintiffs due to Defendants' conduct and for punitive damages in an amount which will adequately reflect the wanton nature of the Defendants' conduct. Further, Plaintiffs pray that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit, and for such other relief to which the Court may find the Plaintiffs entitled.

## B.  COUNT TWO – WANTON CONDUCT

104.  Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety.  All Defendants' conduct, separately and severally, was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs as follows:

105.  Defendant Adalusia Health's conduct was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs because of the following failures:

a.  Failing to accurately assess the position of the fetus on April 6, 2022 at 0107 (Nurse McAlpine) and again at 1153 and 1354 (Nurse Brand);

b.  Failing to request an ultrasound to verify the position of the fetus prior to initiating induction of labor at 0142 on April 6, 2022, particularly given the fact that the baby was, at that time, at a -4 station and Erica was only 1.5 cm dilated and 20% effaced (Nurse McAlpine);

c.  Failing to recognize a breech presentation upon Erica's admission to the Hospital (Nurse McAlpine) or at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

d.  Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurses McAlpine and Brand);

e.  Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

f.  Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

g.  Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

h.  Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

i.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

36

j.  Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

k.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

l.  Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618;

m.  Failure to formulate, implement, and/or enforce clear and appropriate policies and procedures;

n.  Failure to properly train and evaluate staff;

o.  Failure to supervise staff;

p.  Failing to have adequate policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol; and

q.  Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.  It is Plaintiffs' belief and understanding that Dr. Carney was the physician responsible for Erica and her unborn child, R.B.  However, Plaintiffs will inquire as to the communications between Andalusia Health nurses and any other physicians related to the care and treatment of Plaintiffs.

106.  Defendant ScionHealth's conduct was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs because of the following failures:

a.  Failing to accurately assess the position of the fetus on April 6, 2022 at 0107 (Nurse McAlpine) and again at 1153 and 1354 (Nurse Brand);

b.  Failing to request an ultrasound to verify the position of the fetus prior to initiating induction of labor at 0142 on April 6, 2022, particularly given the fact that the baby was, at that time, at a -4 station and Erica was only 1.5 cm dilated and 20% effaced (Nurse McAlpine);

c.  Failing to recognize a breech presentation upon Erica's admission to the Hospital (Nurse McAlpine) or at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

37

d.  Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurses McAlpine and Brand);

e.  Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

f.  Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

g.  Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

h.  Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

i.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

j.  Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

k.  Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

l.  Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

m.  Failure to formulate, implement, and/or enforce clear and appropriate system-wide policies and procedures;

n.  Failure to ensure that Adalusia Health formulated, implemented, and/or enforced clear and appropriate policies and procedures;

o.  Failure to properly train and evaluate staff at the hospitals in its system, including Andalusia Health;

p.  Failure to ensure that Andalusia Health properly trained and evaluated staff;

q.  Failure to supervise administrative and management staff at the hospitals in its system, including Andalusia Health;

r.  Failure to ensure that Andalusia Health administration and management properly supervised staff;

s.  Failing to have adequate system-wide policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol;

t.

u.  Failing to ensure that Andalusia Health had adequate policies and procedures for the timely presence of neonatal providers at delivery and for timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn to be present for resuscitation protocol;

v.  Other acts/omissions anticipated to be discovered; and

w.  Otherwise being negligent in the care and treatment of Erica and R.B.

107.    Defendants Laverness Brand, R.N., Joan Mills, R.N. and Linda Dewrell, R.N.'s conduct was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs because of the following failures:

a.  Failing to accurately assess the position of the fetus on April 6, 2022 at 1153 and 1354 (Nurse Brand);

b.  Failing to recognize a breech presentation at any other time prior to 1519 on April 6, 2022 (Nurse Brand);

c.  Failing to place or advocate for placement of a fetal scalp electrode (including initiation of the chain of command, if necessary) given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate and the presence of a Category II tracing after 0714 on April 6, 2022 (Nurse Brand);

d.  Failing to discontinue administration of Pitocin at 1519 on April 6, 2022, when a breech position was documented (Nurse Brand);

e.  Failing to request that Dr. Carney come to assess Erica at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if he refused to come at that time (Nurse Brand);

39

f. Failing to advocate for an immediate cesarean delivery at 1519 on April 6, 2022, when a breech position was documented, and to initiate the chain of command if Dr. Carney refused to proceed with delivery at that time (Nurse Brand);

g. Failing to immediately notify Dr. Carney when a breech position was again documented by Nurse Brand and confirmed by Nurse Mills at 1608 on April 6, 2022, and the fetal heart rate could not be determined (Nurses Brand and Mills);

h. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1612 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested (Nurses Brand, Mills and Dewrell);

i. Failing to discontinue administration of Pitocin at 1608 on April 6, 2022, when a breech position was documented (Nurses Brand and Mills);

j. Failing to take Erica to, or advocate for taking Erica to the OR for a STAT cesarean delivery at 1620 on April 6, 2022 (including initiating the chain of command if necessary), rather than wasting time obtaining an ultrasound machine bedside as Dr. Carney requested, when it was known that R.B. was in breech position and her heart rate was in the 90s (Nurses Brand, Mills and Dewrell);

k. Failing to immediately notify a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who was able to intubate R.B. upon discovery that R.B. was in breech position (at 1519 and at 1608) and when R.B.'s fetal heart rate could not be determined at 1618; and

l. Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.

108. Defendant Lee Carney, M.D.'s conduct was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs because of the following failures:

a. Ordering induction of labor without accurately verifying the position of the fetus, failing to discontinue induction at 1031 when he should have discovered that the fetus was in breech position when breaking Erica's membranes, and failing to discontinue induction when he was notified that the fetus was in breech position;

b. Failing to adequately assess R.B.'s fetal heart rate on the fetal monitor, either at bedside or remotely, and failure to recognize the inability of the monitor to consistently trace R.B.'s heart rate;

c. Failing to place or order placement of a fetal scalp electrode given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate throughout labor induction and also given the presence of a Category II tracing after 0714 on April 6, 2022;

d.  Failing to recognize that R.B. was in breech position at 1031 on April 6, 2022, when he ruptured Erica's membranes and to order a cesarean delivery at that time;

e.  Failing to come to assess Erica at or around 1519 on April 6, 2022, when Nurse Brand reported Erica's 1519 vaginal exam to him, which she documented as finding R.B. in a breech position, and to order a cesarean delivery after confirming the breech position;

f.  Failing to immediately order a STAT cesarean delivery at 1612 on April 6, 2022, when he was notified (again) that R.B. was in breech position and that the nursing staff could not obtain a fetal heart rate, rather than wasting time obtaining an ultrasound; and

g.  Other acts/omissions anticipated to be discovered throughout the deposition and discovery process.

109.  Defendant Covington OB/Gyn's conduct was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs because of the following failures:

a.  Ordering induction of labor without accurately verifying the position of the fetus, failing to discontinue induction at 1031 when he should have discovered that the fetus was in breech position when breaking Erica's membranes, and failing to discontinue induction when he was notified that the fetus was in breech position;

b.  Failing to adequately assess R.B.'s fetal heart rate on the fetal monitor, either at bedside or remotely, and failure to recognize the inability of the monitor to consistently trace R.B.'s heart rate;

c.  Failing to place or order placement of a fetal scalp electrode given the failure of the fetal heart rate monitor to consistently trace R.B.'s heart rate throughout labor induction and also given the presence of a Category II tracing after 0714 on April 6, 2022;

d.  Failing to recognize that R.B. was in breech position at 1031 on April 6, 2022, when he ruptured Erica's membranes and to order a cesarean delivery at that time;

e.  Failing to come to assess Erica at or around 1519 on April 6, 2022, when Nurse Brand reported Erica's 1519 vaginal exam to him, which she documented as finding R.B. in a breech position, and to order a cesarean delivery after confirming the breech position;

f.  Failing to immediately order a STAT cesarean delivery at 1612 on April 6, 2022, when he was notified (again) that R.B. was in breech position and that the nursing staff could not obtain a fetal heart rate, rather than wasting time obtaining an ultrasound;

g.  Failure to formulate, implement, and/or enforce clear and appropriate policies and procedures;

h.  Failure to properly train and evaluate its physicians;

i.  Failure to supervise its physicians; and

j.  Other acts/omissions anticipated to be discovered.

110.  **THEREFORE**, Plaintiffs pray that a jury be selected to hear this case and render a verdict for Plaintiffs against Defendants for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by Plaintiffs due to Defendants' conduct and for punitive damages in an amount which will adequately reflect the wanton nature of the Defendants' conduct.  Further, Plaintiffs pray that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit, and for such other relief to which the Court may find the Plaintiffs entitled.

## C. COUNT THREE – NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

111.  Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety.

112.  Defendant Andalusia Health and its parent corporations, including but not limited to ScionHealth separately and severally, was negligent in the hiring, training, supervision, and retention of individuals who cared for and treated Plaintiffs, including but not limited to Nurses McAlpine, Brand, Mills and Dewrell.  The nurses at Andalusia Health were not properly trained and educated, nor were they properly supervised by charge nurses, managers and nurse educators on appropriate care of patients in labor and going through induction of labor including, but not limited to, the determination and verification of fetal presentation prior to induction of labor, circumstances giving rise to the need for a fetal scalp electrode to monitor

a baby's fetal heart rate continually and consistently, the need for STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable, how and when to advocate for their patient and, if needed, use of the chain of command, and the timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn for presence at delivery. ScionHealth, which had the ultimate responsibility for the care at Andalusia Health, failed to ensure that the management staff at Andalusia Health adequately trained, educated and supervised its nursing staff as described above.

113.    Further, Andalusia Health and its parent corporation, including but not limited to ScionHealth, separately and severally, failed to educate or re-educate its nursing staff, including but not limited to Nurses McAlpine, Brand, Mills and Dewrell, when it was evident their nursing skills did not meet the standard of care, including but not limited to determination and verification of fetal presentation prior to induction of labor, circumstances giving rise to the need for a fetal scalp electrode to monitor a baby's fetal heart rate continually and consistently, the need for STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable, how and when to advocate for their patient and, if needed, use of the chain of command and the timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn for presence at delivery. Additionally, Andalusia Health and its parent corporation, including but not limited to ScionHealth, separately and severally, was negligent by retaining nurses who repeatedly failed to care for patients according to the applicable standard of care. ScionHealth, which had the ultimate responsibility for the care at Andalusia Health, failed to ensure that the management staff at Andalusia Health adequately educated and re-educated its nursing staff as

needed and failed to terminate nurses who repeatedly failed to meet the standard of care as described above.

114.   To the extent that Dr. Carney or Covington OB/Gyn were also responsible for any of the hiring or supervision of the nurses at Andalusia Health, then Count 3 would also apply to Dr. Carney and Covington OB/Gyn.

115.   As a proximate result of the Defendants' negligent hiring, training, supervision, and retention of individuals who cared for and treated the Plaintiffs, Plaintiffs suffered injuries and damages described above.

116.   **THEREFORE**, Plaintiffs pray that a jury be selected to hear this case and render a verdict for Plaintiffs against Defendants for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by Plaintiffs due to Defendants' conduct and for punitive damages in an amount which will adequately reflect the wanton nature of the Defendants' conduct.  Further, Plaintiffs pray that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit, and for such other relief to which the Court may find the Plaintiffs entitled.

### D. COUNT FOUR – WANTON HIRING, TRAINING, SUPERVISION AND RETENTION

117.   Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety. Andalusia Health and ScionHealth's conduct, separately and severally, was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs as follows:

118.   Defendant Andalusia Health and its parent corporations, including but not limited to ScionHealth separately and severally, was negligent in the hiring, training, supervision, and

retention of individuals who cared for and treated Plaintiffs, including but not limited to Nurses McAlpine, Brand, Mills and Dewrell.  The nurses at Andalusia Health were not properly trained and educated, nor were they properly supervised by charge nurses, managers and nurse educators on appropriate care of patients in labor and going through induction of labor including, but not limited to, the determination and verification of fetal presentation prior to induction of labor, circumstances giving rise to the need for a fetal scalp electrode to monitor a baby's fetal heart rate continually and consistently, the need for STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable, how and when to advocate for their patient and, if needed, use of the chain of command, and the timely notification of a neonatologist, neonatal nurse practitioner or other provider certified in NRP and who is able to intubate a newborn for presence at delivery.  ScionHealth, which had the ultimate responsibility for the care at Andalusia Health, failed to ensure that the management staff at Andalusia Health adequately trained, educated and supervised its nursing staff as described above.

119.  Further, Andalusia Health and its parent corporation, including but not limited to ScionHealth, separately and severally, failed to educate or re-educate its nursing staff, including but not limited to Nurses McAlpine, Brand, Mills and Dewrell, when it was evident their nursing skills did not meet the standard of care, including but not limited to determination and verification of fetal presentation prior to induction of labor, circumstances giving rise to the need for a fetal scalp electrode to monitor a baby's fetal heart rate continually and consistently, the need for STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable, how and when to advocate for their patient and, if needed, use of the chain of command, and the timely notification of a neonatologist, neonatal

nurse practitioner or other provider certified in NRP and who is able to intubate a newborn for presence at delivery. Additionally, Andalusia Health and its parent corporation, including but not limited to ScionHealth, separately and severally, was negligent by retaining nurses who repeatedly failed to care for patients according to the applicable standard of care. ScionHealth, which had the ultimate responsibility for the care at Andalusia Health, failed to ensure that the management staff at Andalusia Health adequately educated and re-educated its nursing staff as needed and failed to terminate nurses who repeatedly failed to meet the standard of care as described above.

120.    To the extent that Dr. Carney or Covington OB/Gyn were also responsible for any of the hiring or supervision of the nurses at Andalusia Health, then Count 4 would also apply to Dr. Carney and Covington OB/Gyn.

121.    **THEREFORE**, Plaintiffs pray that a jury be selected to hear this case and render a verdict for Plaintiffs against Defendants for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by Plaintiffs due to Defendants' conduct and for punitive damages in an amount which will adequately reflect the wanton nature of the Defendants' conduct. Further, Plaintiffs pray that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit, and for such other relief to which the Court may find the Plaintiffs entitled.

**E.  COUNT FIVE – NEGLIGENT PROVISION OF MEDICAL SERVICES**

122.    Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety.

123.    In the alternative, all Defendants separately and severally, negligently provided medical services to Plaintiffs. Specifically, Defendants failed to appropriately care for Erica during

labor and in connection with induction of labor, the nursing staff failed to determine and/or verify the fetal presentation prior to induction of labor by ultrasound, Defendants failed to recognize the need for a fetal scalp electrode to monitor R.B.'s fetal heart rate continually and consistently, Defendants failed to recognize the need for a STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable and to discontinue the use of Pitocin at that time, Dr. Carney failed to order a STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable, and the nursing staff failed timely advocate for their patient and, if needed, use of the chain of command and failed to timely notify the neonatologist, neonatal nurse practitioner or other provider certified in NRP and to be present at delivery to resuscitate R.B.

124.    As a proximate result of the Defendants' negligence, the Plaintiffs suffered injuries and damages as described above.

125.    **THEREFORE**, Plaintiffs pray that a jury be selected to hear this case and render a verdict for Plaintiffs against Defendants for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by Plaintiffs due to Defendants' conduct and for punitive damages in an amount which will adequately reflect the wanton nature of the Defendants' conduct.   Further, Plaintiffs pray that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit, and for such other relief to which the Court may find the Plaintiffs entitled.

### F.  COUNT SIX – WANTON PROVISION OF MEDICAL SERVICES

126.    Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety.   All Defendants' conduct, separately and severally, was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs as follows:

127.    In the alternative, the medical services provided by all Defendants, separately and severally, was carried on with a reckless or conscious disregard of the rights or safety of Plaintiffs because of the following failures.  Specifically, Defendants failed to appropriately care for Erica during labor and in connection with induction of labor, the nursing staff failed to determine and/or verify the fetal presentation prior to induction of labor by ultrasound, Defendants failed to recognize the need for a fetal scalp electrode to monitor R.B.'s fetal heart rate continually and consistently, Defendants failed to recognize the need for a STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable and to discontinue the use of Pitocin at that time, Dr. Carney failed to order a STAT cesarean delivery in the setting of a breech presentation and fetal heart rate in the 90s or indeterminable, and the nursing staff failed to timely advocate for their patient and, if needed, use of the chain of command and failed to timely notify the neonatologist, neonatal nurse practitioner or other provider certified in NRP and to be present at delivery to resuscitate R.B.

128.    **THEREFORE**, Plaintiffs pray that a jury be selected to hear this case and render a verdict for Plaintiffs against Defendants for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by Plaintiffs due to Defendants' conduct and for punitive damages in an amount which will adequately reflect the wanton nature of the Defendants' conduct.  Further, Plaintiffs pray that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit, and for such other relief to which the Court may find the Plaintiffs entitled.

### G. COUNT SEVEN

129.    The negligence and/or wanton conduct of Defendants as described above and others who may be yet unknown, combined and concurred to ultimately cause the injuries and danger set forth above.

130.    **THEREFORE**, Plaintiffs pray that a jury be selected to hear this case and render a verdict for Plaintiffs against Defendants for compensatory damages in an amount which will adequately compensate Plaintiffs for the injuries and damages sustained by Plaintiffs due to Defendants' conduct and for punitive damages in an amount which will adequately reflect the wanton nature of the Defendants' conduct.  Further, Plaintiffs pray that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit, and for such other relief to which the Court may find the Plaintiffs entitled.

### H. COUNT EIGHT – VICARIOUS LIABILITY

131.    Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety.

132.    Each Defendant, namely Community Hospital of Andalusia, LLC d/b/a Andalusia Health, Knight Health Holdings LLC d/b/a ScionHealth, Laverness Brand, R.N.; Joan Mills, R.N.; Linda Dewrell, R.N., Lee Carney, M.D. and Covington Gynecology, P.C. d/b/a Covington Obstetrics and Gynecology is vicariously liable for the acts and/or omissions of those individuals whose acts and/or omissions they may be held vicariously liable for under the law. This is true regardless of whether this liability arises out of a theory of a master-servant relationship, a principal-agent relationship, joint venture, ostensible agency, estoppel, or any other theory.

133.    **THEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in favor of Plaintiffs and against Defendants, separately and severally, for such damages as the jury may assess.

### I.   COUNT NINE – JOINT AND SEVERAL LIABILITY

134.    Plaintiffs adopt and incorporate by reference the allegations and claims stated above as if set forth in their entirety.

135.    The negligence and/or wanton conduct of Defendants combined and concurred to proximately cause R.B.'s injuries and Plaintiffs' damages, and Defendants are jointly and severally liable to Plaintiffs.

136.    THEREFORE, Plaintiffs respectfully request that this Court enter a judgment in favor of Plaintiffs and against Defendants, separately and severally, for such damages as the jury may assess.

Respectfully submitted,

*/s/ Robert Wolf*
**LES WEISBROD**
*pending pro hac vice in State Court*
lw@millerweisbrod.com
Texas State Bar No. 21104900
**ROBERT WOLF**
*pending pro hac vice in State Court*
rwolf@millerweisbrod.com
Texas State Bar No. 24028234
**LAUREN N. PIERCE**
*pending pro hac vice in State Court*
lpierce@millerweisbrod.com
Texas State Bar No. 00784675
**LAWRENCE R. LASSITER**
llassiter@millerweisbrod.com
Texas State Bar No. 11969850
*admitted pro hac vice*

**MILLER WEISBROD OLESKY, LLP**
11551 Forest Central Drive
Suite 300
Dallas, Texas 75243
(214) 987-0005
(214) 987-2545 (Fax)

**and**

**CHARLES JAMES, II**
The Serious Injury Law Group, PC
2901 Zelda Road
Montgomery, Alabama 36106
Office: 334-832-1001
Fax: 334-832-1002

**Attorneys for Plaintiffs**

**JURY DEMAND**

Plaintiffs hereby demand a trial by struck jury for all issues involved in this case.

/s/ *Charles James, II*
CHARLES JAMES, II
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was served on all

counsel of record using the Court's CM/ECF system on this 26th day of May, 2023.

/s/ *Robert Wolf*
ROBERT WOLF, admitted pro hac vice
Attorney for Plaintiffs