IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERICA CHANDLER, as natural parent, legal custodian, and next friend of decedent R.B., a minor, and ERICA CHANDLER, individually, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL CASE NO. 2:23-cv-210-ECM [WO] |
| LAVERNESS BRAND, *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This is a civil medical malpractice action before the Court pursuant to its diversity jurisdiction, 28 U.S.C. § 1332(d).  The case arises out of the allegedly wanton or negligent provision of medical care which the Plaintiffs received during labor and delivery and immediately thereafter at Defendant Community Hospital of Andalusia ("Hospital"). Months into this litigation, the Hospital filed a motion to dismiss for lack of jurisdiction. (Doc. 73).  In support of its motion, the Hospital submitted a declaration which it later discovered was false.  After the Hospital withdrew the false declaration, the Plaintiffs filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, which is now pending before the Court. (Doc. 93).  The matter is fully briefed and ripe for adjudication. For the following reasons, the Court concludes that Rule 11 sanctions are not appropriate, and the Plaintiffs' motion is due to be denied.

## II. BACKGROUND

Plaintiffs Erica Chandler, as natural parent, legal custodian, and next friend of decedent R.B., a minor ("R.B."), and Erica Chandler ("Chandler"), individually, filed their second amended complaint on September 23, 2024. (Doc. 127).  The Plaintiffs, who are Florida citizens, allege that the Defendants wantonly or negligently provided medical care to Chandler at the Hospital during the labor and delivery of R.B., and that they wantonly or negligently provided medical care to R.B. immediately thereafter.[1] (*Id.*).  The Plaintiffs bring no claims against the Hospital in the operative complaint. (*Id.*).  However, the events giving rise to the motion for sanctions occurred while the first amended complaint, which included the Hospital as a Defendant and largely tracked the same claims, was the operative complaint.  Accordingly, the Court refers to the first amended complaint in developing the background of the present dispute.

The first amended complaint in this case was filed on May 26, 2023. (Doc. 37).  Among the Defendants were the Hospital and its parent company, Knight Health Holdings ("KHH"), which is owned by a series of parent companies ending with Apollo Global Management ("Apollo").[2]  On June 26, 2023, the Hospital filed an answer to the complaint in which it stated it was "not a citizen of the State of Florida" for purposes of diversity jurisdiction. (Doc. 45 at 1).

---

[1] The Defendants named in the second amended, operative, complaint are Laverness Brand, R.N.; Joan Mills, R.N.; Linda Derwell, R.N.; Elizabeth McAlpine, R.N.; Lee Carney, M.D.; and Covington Gynecology, P.C.

[2] KHH was a Defendant named in the first amended complaint but is not named in the second amended complaint, and thus, is not a party to this action.  Apollo is not, and has never been, a party to this case.

On September 26, 2023, however, the Hospital filed a motion to dismiss for lack of jurisdiction. (Doc. 73).  Specifically, the Hospital represented that it had recently "learned additional information regarding the members of [the Hospital]" which would destroy diversity jurisdiction on grounds it had not previously contested. (*Id.* at 3).  According to the Hospital, it discovered that Apollo had a limited partner—the State Board of Administration of Florida—which is a Florida citizen. (*Id.*).  Because the Plaintiffs are Florida citizens, and the citizenship of an LLC or limited partnership is determined by the citizenship of all its members, the Hospital contended that it would now be considered a citizen of Florida and thus diversity jurisdiction would no longer exist. (*Id.* at 4).

On October 11, 2023, the Plaintiffs, wanting to verify the Hospital's claim about a diversity destroying member of Apollo, filed a motion to compel jurisdictional discovery. (Doc. 78).  In their motion, the Plaintiffs describe a conference held with the Hospital. Despite initially agreeing to conduct jurisdictional discovery if necessary in its Rule 26(f) report (doc. 50 at 4), the Hospital indicated that, in its belief, the Plaintiffs were not entitled to jurisdictional discovery and that it would not respond to it. (Doc. 78 at 5).  Thereafter, on October 16, 2023, the Hospital filed a response to the motion to compel, reiterating that it did not believe the Plaintiffs were entitled to jurisdictional discovery. (Doc. 81).  The Hospital asserted that "the discovery sought [by Plaintiffs was] futile" because it had already "established through evidence that prove[d] 'beyond a reasonable doubt'" that diversity jurisdiction did not exist. (*Id.* at 2).

In support of this submission, the Hospital provided a copy of the signed declaration of Kathy Teague ("Teague"), corporate secretary for KHH. (Doc. 81-1).  In her declaration,

dated October 13, 2023, Teague wrote that she had "knowledge of and access to information regarding the business structure for Knight Health Holdings, LLC and other companies within the business structure," including the Hospital. (*Id.* at 2). As to that structure, she explained:

> Community Hospital of Andalusia, LLC is wholly owned by member Knight Healthcare New-A Sub, LLC which is a Delaware limited liability company that is wholly owned by member Knight Healthcare New-A, LLC which is a Delaware limited liability company that is wholly owned by member Knight Healthcare New A-P, LLC, which is a Delaware limited liability company that is wholly owned by member Knight Health II, LLC, which is a Delaware limited liability company that is wholly owned by member Knight Health Holdings, LLC which is a Delaware limited liability company that is wholly owned by member Knight Intermediate Holdings, LLC which is a Delaware limited liability company that is wholly owned by member Knight Parent, L.P., which is a Delaware limited partnership owned by certain investment funds and investment vehicles managed by affiliates of Apollo Global Management, Inc., a publicly-traded company on the NYSE, directly or indirectly through special purpose holding companies, one of the limited partners of which is the State Board of Administration of Florida, a Florida citizen for jurisdictional purposes which is organized under the laws and statutes of Florida. That citizenship is imputed to Community Hospital of Andalusia, LLC. For jurisdictional purposes because there is an unbroken chain of limited liability companies and limited partnerships between the Florida citizen and Community Hospital of Andalusia, LLC.

(*Id.* at 3). The Plaintiffs replied on October 18, 2023. (Doc. 83). Following a status conference on November 9, 2023, the Court granted the Plaintiffs' motion to compel jurisdictional discovery with a deadline of February 15, 2024. (Doc. 90).

On December 29, 2023, during discovery, the Hospital withdrew Teague's declaration which it previously claimed foreclosed any dispute on diversity jurisdiction.

(Doc. 92).  As it turned out, the State Board of Administration of Florida "had sold its interest in Apollo prior to the time the complaint in this case was filed," and the declaration was therefore false. (*Id.* at 2).  The Plaintiffs deposed Teague (doc. 101-8) and Brian Carney ("Carney") (doc. 101-7), Apollo's managing director and general counsel for litigation and regulation, who explained how this mistake occurred.  Teague was "not involved in the operation or ownership structure of Apollo entities" and had neither "ownership or control of the upstream Apollo entities' business records or organizational documents, nor independent access to Apollo's business information." (Doc. 101 at 5; doc 101-8 at 27–34).  As such, Teague was required to request any document she might need relating to Apollo from their outside corporate counsel. (Doc. 101-8 at 25–28).

In accordance with normal procedure, Teague contacted outside counsel to determine whether any Florida entities were partners in Apollo. (*Id.* at 25–28, 82).  To summarize, Teague reached out to Apollo's outside counsel, who reached out to Apollo's general counsel, who reached out to his paralegal, who reached out to Apollo's deputy counsel for funds. (Doc. 101-7 at 46–51).  The deputy counsel was tasked with finding not just whether there was a Florida-based investor in Apollo, but whether there was one whose investment stake was publicly disclosed. (*Id.* at 46).  Upon conducting an internet search, the deputy counsel concluded that the State Board of Administration of Florida was an investor in Apollo and passed this information back through the chain to Teague. (*Id.* at 50–52).  Although Apollo maintained an investor register database and was therefrom able to pull data showing all active partners in the Fund, "nobody at Apollo checked the register with regard to the State Board of Administration [of] Florida." (*Id.* at 53).  It was in this

context that Teague received the information forming the basis of her declaration. (Doc. 81-1).

It was not until months later in December, when Teague requested more documents related to jurisdictional discovery from Apollo, that the Hospital and lawyers from Apollo realized their mistake. (Doc. 101-7 at 36). At the same time, however, the Hospital learned of two other entities—Florida University and Florida Hospital—that are investors in Apollo and which the Hospital believes are sufficient to defeat diversity jurisdiction. (*Id.* at 35).

In addition to withdrawing Teague's declaration, the Hospital quickly contacted the Plaintiffs' counsel to inform them of the situation. (Doc. 101 at 15). It also offered to provide the documents establishing the Florida entities as investors in Apollo if they could be filed under seal. (*Id.*). On January 19, 2024, the Plaintiffs filed the motion for sanctions which is now before the Court. (Doc. 93).

### III.  LEGAL STANDARD

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . . ." FED. R. CIV. P. 11(b). "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was

reasonable to believe at the time' the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (citation omitted).   This analysis requires a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Id.* "Although sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Id.* The Eleventh Circuit has explained that sanctions are warranted, for example, when a "party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success . . . and (3) is filed in bad faith for an improper purpose." *Id.*

When a motion for Rule 11 sanctions is filed by an opposing party rather than raised *sua sponte* by the Court, the movant must comply with Rule 11's "safe harbor" requirement. FED. R. CIV. P. 11(c)(2).   The safe harbor requires that the movant serve their motion upon the non-movant at least twenty-one days prior to filing it with the court. *Id.* If the non-movant withdraws or corrects the allegedly sanctionable filing, then the motion for sanctions is not to be filed with the court. *Id.*

## IV. DISCUSSION

The Court must determine whether the Hospital and its counsel should be sanctioned based on the withdrawn declaration of Kathy Teague. (Doc. 81-1).[3]   The Plaintiffs argue

---

[3] Although the Hospital is not currently before the Court in this action because they are not named as a defendant in the newly filed, operative complaint, it was before the Court at the time this motion was filed.  Further, the Hospital's

that sanctions are appropriate because (1) the Hospital and its counsel had time to conduct a factual and legal investigation before filing its pleadings with the Court challenging subject matter jurisdiction; (2) "[the Hospital]'s counsel did not have to rely on [the Hospital] to verify whether [it] was owned directly or indirectly by a Florida citizen"; (3) "[the Hospital]'s counsel's conduct exhibits a 'deliberate indifference to obvious facts'"; (4) "[t]his was part of a pattern of activity of [the Hospital]"; and (5) the Plaintiffs were prejudiced by the Hospital's conduct. (Doc. 93 at 11–14).  In response, the Hospital asserts that (1) the "Plaintiffs failed to comply with Rule 11's Safe Harbor [r]equirement"; (2) the Hospital's "argument regarding jurisdiction was objectively reasonable"; and (3) the Hospital and its counsel "made a reasonable inquiry into relevant facts." (Doc. 101 at 21–26).  Upon consideration of the motion, the Court finds that Rule 11 sanctions are not appropriate.

## A.   Safe Harbor

The Court begins by addressing the Hospital's argument that the Plaintiffs failed to comply with Rule 11's safe harbor provision prior to filing their motion with the Court. Rule 11(c)(2) states, in relevant part, that a motion for sanctions "must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service." FED. R. CIV. P. 11(c)(2).  The Hospital claims that because it had already withdrawn the declaration prior to the Plaintiffs filing their motion, the

---

attorneys are officers of the court, subject to sanctions under Rule 11.  Therefore, the Court finds it appropriate to resolve the motion. *Cf. Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (holding that a district court may address a sanctions motion based on its inherent power even if it lacks jurisdiction over the underlying case).

Plaintiffs' motion should be denied. (Doc. 101 at 22).  The Plaintiffs assert that "the safe harbor provision exists to allow the non-movant time to withdraw a pleading violative of Rule 11" and that the provision is therefore inapplicable in this case as "Teague's declaration was withdrawn prior to the filing of Plaintiff's motion for sanction[s]." (Doc. 104 at 16).  In other words, Rule 11 does not apply in this situation, according to the Plaintiffs, because there was no "challenged paper" to be "withdrawn."  FED. R. CIV. P. 11(c)(2).

The Plaintiffs' argument is unpersuasive.  The Hospital withdrew the declaration before service of the motion for sanctions, and thus it necessarily follows that it withdrew the declaration within 21 days after service.  Accordingly, the Hospital properly availed itself of the safe harbor, and the motion for sanctions was not necessary to achieve that remedy.  The Advisory Committee Notes indicate that Rule 11's safe harbor exists to encourage the exact response of the Defendant upon realizing the falsity of Teague's declaration—proactively withdrawing the false document—not to make it easier to punish a party who corrects false submissions to the court. FED. R. CIV. P. 11(c) advisory committee's note to the 1993 Amendment.  The safe harbor was added to Rule 11 in 1993 to address the reluctance of parties "to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11." *Id.*  Responding to that concern, the safe harbor ensures that "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified

allegation." *Id.*  Accordingly, "the timely withdrawal of a contention will protect a party against a motion for sanctions." *Id.*

It would make little sense to reward the Hospital—by allowing it to seek refuge in the safe harbor—for withdrawing the declaration only after it was under the direct threat of sanctions from the Plaintiffs, but punish it—by finding the safe harbor inapplicable— because it proactively withdrew the declaration prior to being threatened with sanctions.  It is not so much that the Plaintiffs failed to comply with the safe harbor; it is that the Hospital, by immediately withdrawing the declaration upon learning it was false, protected itself from the Plaintiffs' Rule 11 motion.

Because the Hospital withdrew the challenged paper (Teague's declaration) before (and thus within twenty-one days of) service of the motion for sanctions in accordance with Rule 11(c)(2), the motion for sanctions is due to be denied for this reason alone. Nevertheless, the Court finds further reasons for denying the motion, as discussed below.

## B.   Objective Frivolity

The Court next considers whether the Hospital's "claims were objectively frivolous in view of the law or facts." *Rowe v. Gary*, 703 F. App'x. 777, 779 (11th Cir. 2017) (citing *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995)).[4]  "A [pleading] is factually groundless and merits sanctions where the filing party has absolutely no evidence to support its allegations." *In re Mroz*, 65 F.3d at 1573.  "[I]f no reasonably competent attorney could

---

[4] Here, and elsewhere in this Opinion, the Court cites nonbinding authority.  While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

conclude" that a claim has a reasonable evidentiary basis, it is frivolous. *Lawson v. Sec'y Dep't Corr.*, 563 F. App'x 678, 680 (11th Cir. 2014).

It cannot be said that the Hospital had "absolutely no evidence to support" its claim that it had a diversity-destroying member. *See In re Mroz*, 65 F.3d at 1573.  At the time of filing its motion to dismiss for lack of jurisdiction, the Hospital was aware of facts which, although ultimately false, supported its contention that this Court lacked jurisdiction over the claims against it.  LLCs and limited partnerships are citizens of the states in which all of their members are citizens. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).  The Hospital had received information from Teague indicating that an upstream parent company had a member which was a Florida citizen. Diversity jurisdiction requires *complete* diversity, and the Plaintiffs are citizens of Florida. Thus, on this record, the Court finds that a reasonably competent attorney could conclude that the Hospital's claim had a reasonable evidentiary basis. *See Lawson*, 563 F. App'x at 680.

## C.   Reasonable Inquiry

Because the facts underlying the motion to dismiss and accompanying declaration were false, the Court must also address whether the Hospital and its counsel conducted a reasonable inquiry into these facts.  Factors relevant to this determination include "how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the [violative document]; . . . or whether he depended on forwarding counsel or another member of the bar." *Mike Ousley Prods., Inc. v. WJBF-TV,* 952 F.2d 380, 382 (11th Cir. 1992) (quoting FED. R. CIV. P. 11 advisory

11

committee's note to 1983 amendment).  The Hospital asserts that the ownership documents necessary to determine the members of its upstream parent companies, and thus to determine its own citizenship for the purpose of diversity jurisdiction, were out of its control.  The depositions of Carney and Teague describe the steps that Teague had to take to acquire these documents and the information therein. (Doc. 101-7; doc. 101-8).  The Plaintiffs reject this assertion and instead claim that all the Hospital had to do was examine "the limited partnership and LLC agreements starting with [the Hospital] and up the chain of ownership to determine who the limited partners or members at each level were, in which state each entity was formed, and in which state each entity had its principal place of business." (Doc. 93 at 12).  Moreover, the Plaintiffs argue the notion that the Hospital did not have access to documents proving Florida citizenship but could, in good faith, file multiple pleadings asserting Florida citizenship is "absurd." (*Id.* at 13).

The Court finds that the Hospital conducted a reasonable inquiry under the circumstances.  The record supports a finding that the Hospital did not have direct control over the documents necessary to determine the members and citizenship of its upstream parent companies.  Instead, there was a procedure by which Teague and other corporate representatives had to request such information from other individuals.  The Hospital, therefore, was not in direct control of information that, if further investigated, would have demonstrated the falsity of the declaration.  Moreover, it was not unreasonable under the circumstances for the Hospital to trust the representations of Apollo's attorneys regarding Apollo's corporate structure for purposes of determining the existence of diversity jurisdiction.  Every competent attorney understands that a federal court must have subject

matter jurisdiction to preside over a case.  When the Hospital asked Apollo's outside and general counsels to determine whether Apollo had a Florida member which would defeat complete diversity, it was not unreasonable for the Hospital to assume that Apollo's attorneys understood the importance of the inquiry.  True, the Hospital could have made further inquiry as to the basis for Apollo and its counsels' representation regarding the membership status of the State Board of Administration of Florida.  Then it might have discovered that the information was based on a mere internet search rather than actual corporate records.  But the Hospital's reliance on the word of Apollo's attorneys in this situation was not *unreasonable*, particularly given the control Apollo's attorneys had over the relevant information.  Thus, the Court finds that the Hospital conducted a reasonable inquiry into the facts underlying the claim that it had a diversity-destroying member.  Consequently, the motion for sanctions is due to be denied for this additional, independent reason.

## V.  CONCLUSION

While the Court finds Rule 11 sanctions are not appropriate, it nevertheless admonishes the parties for their behavior throughout this jurisdictional dispute.  The parties are reminded of their obligations under the Federal Rules of Civil Procedure, including, but not limited to, the obligation to make timely disclosures and cooperate in discovery, FED. R. CIV. P. 37, and to use the litigatory process "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.  Lawyers have an express obligation "to work cooperatively in controlling the expense and time demands of litigation" and "an affirmative duty to work together, and with the court, to

achieve prompt and efficient resolutions of disputes." Chief Justice John Roberts, *2015 Year-End Report on the Federal Judiciary* (2015).  This case involves an allegedly injured mother, her now-deceased child, and six Defendants, five of whom are individual nurses and doctors.  Whatever result, the individuals in this case deserve resolution.

For the reasons stated above, it is

ORDERED that the motion for sanctions (doc. 93) is DENIED.

DONE this 27th day of September, 2024.

/s/ Emily C. Marks

EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE