IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ERICA CHANDLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:23-cv-210-ECM |
| | ) | [WO] |
| LAVERNESS BRAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

## I.  INTRODUCTION

This case involves the allegedly negligent or wanton provision of medical care that
Plaintiff Erica Chandler ("Chandler") and her now-deceased child R.B. received during
Chandler's labor and delivery of R.B. at Andalusia Health in 2022.  Chandler brings
claims against four individual nurses, one individual doctor, and Covington Gynecology,
P.C. (collectively, the "Defendants").  Chandler now seeks leave to file a third amended
complaint (doc. 151) to add Danielle Rodgers ("Rodgers" or "Nurse Rodgers"), a
registered nurse who was allegedly responsible for the training and education of the four
nurses currently party to this suit, as a defendant.  The motion is fully briefed and ripe for
review.  For the reasons below, Chandler's motion is due to be GRANTED.

## II.  JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to
28 U.S.C. § 1332.  Personal jurisdiction and venue are uncontested, and the Court

concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) states that "[a] party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." *Id.*  "[U]nless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).  "A motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (citation omitted).  The Eleventh Circuit has held "that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citation omitted); *see also Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss.").[1]  "The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the

---

[1] Here, and elsewhere throughout this Opinion, the Court cites nonbinding authority.  While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

opportunity to amend their complaint." *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001) (citation omitted).

## IV.  BACKGROUND

This litigation has been ongoing for over two years.  Chandler filed her original complaint on April 12, 2023 (doc. 1), and her first amended complaint on May 26, 2023 (doc. 37).  After a lengthy and hotly contested battle over this Court's jurisdiction, Chandler agreed to dismiss any potentially diversity destroying defendants and filed her second amended complaint on September 23, 2024. (Doc. 127).  After the remaining Defendants answered, the Court entered a Uniform Scheduling Order ("USO") on December 18, 2024. (Doc. 145).  Relevant here, the Court ordered that any amendments to the pleadings "shall be filed on or before March 5, 2025." (*Id.* at 2).[2]  On March 5, 2025, Chandler moved for leave to file her third amended complaint (doc. 151), which she included as an attachment (doc. 151-1).  The Defendants responded in opposition on March 7, 2025 (doc. 153), and Chandler replied on March 17, 2025 (doc. 158).

## V.  DISCUSSION

As briefly mentioned, Chandler alleges that the Defendants negligently or wantonly provided her and her now-deceased child medical care.  In seeking to add Rodgers as a Defendant, Chandler asserts that she "only recently discovered that Nurse Rodgers essentially functioned as the nurse educator for the labor and delivery unit at

---

[2] Mediation in this Court is mandatory, and in its USO, the Court accordingly ordered that the parties file a joint mediation plan "no later than September 29, 2025." (*Id.*).  On January 17, 2025, less than one month after the Court entered its USO and over eight months before the parties' mediation deadline, Chandler filed a motion to compel mediation. (Doc. 146).  To the extent Chandler seeks to move the Court-imposed deadline up, her motion is due to be DENIED.

Andalusia Health during the relevant time period." (Doc. 158 at 2).  The Defendants make two arguments in support of denying Chandler a third opportunity to amend her complaint.  First, they claim the proposed amendment would be futile "because the claims [Chandler] seeks to present against Nurse Rodgers are not even legally cognizable" and "categorically incapable of providing a plausible entitlement to recovery." (Doc. 153 at 2, para. 2).  Second, the Defendants claim that "the belated timing" of Chandler's amendment is "troubling" and "indicative of a bad-faith ulterior motive." (*Id.* at 5, para. 8).  The Court addresses each argument in turn.

## A.    Futility

The Defendants argue that amendment would be futile because "Alabama law does not recognize a cause of action against a supervisor for negligent supervision of a subordinate; a negligent supervision claim must be against the employer." (Doc. 153 at 2, para. 4).  The Court previously addressed this issue in-depth in *Gulley v. Foshee*, 2024 WL 1329911 (M.D. Ala. Mar. 27, 2024).  Using a "negligent supervision" theory, the plaintiffs in *Gulley* sued the direct supervisor of an 18-wheeler driver after a multivehicle accident injured the plaintiffs.  They did not, however, sue the company responsible for operating the 18-wheeler.  The defendants[3] argued that the supervisor had been fraudulently joined, as "negligent supervision" claims lie "only against an employer and not against an individual supervisor." *Id.* at *3. The plaintiffs asserted,  as Chandler  does

---

[3] The other defendants in *Gulley* were General Motors LLC and Fiat Chrysler Automobiles US, LLC, who the plaintiffs alleged "contracted with the [18-wheeler operator] to transport GM and FCA vehicles within the State of Alabama." *Id.* at *2.

here, that they sought to hold the supervisor "*directly* liable for his *own* negligent conduct in supervising [the driver], rather than a theory of *respondeat superior* or vicarious liability." *Id.* (emphases added).

In discerning whether the plaintiffs could bring such a claim, the Court thoroughly examined caselaw from the Alabama Supreme Court, focusing first on a case cited by Chandler here—*Machen v. Childersburg Bancorporation*, 761 So. 2d 981 (Ala. 1999). The Court analyzed the case as follows:

> In *Machen*, the Alabama Supreme Court reversed the grant of summary judgment in favor of an employer bank as well as its chief operations officer ("COO") and chief executive officer ("CEO"), all of whom were alleged to be liable for negligence and wantonness in connection with their supervision of a subordinate employee accused of sexual harassment. *Id.* at 986–87. The court held that genuine issues of material fact existed as to whether the COO and CEO negligently or wantonly failed "failed to properly investigate, train, supervise, and discipline [the harasser]" where evidence showed that the COO and CEO knew about the plaintiff's allegations of sexual harassment but only verbally reprimanded the harasser, made no written report, and did not follow up with the plaintiff to determine whether the harassment had stopped, and the harassment continued. *Id.* at 987. The court concluded that a reasonable jury could find that had the COO and CEO "monitored and/or supervised the situation more carefully, [the harasser] would not have repeated the acts of misconduct." *Id.* The court did not suggest that a negligent or wanton supervision claim against a supervisor was unavailable as a matter of law, and even if no party had raised the argument, the court likely could have affirmed on that basis because the court may affirm the judgment below "on any valid legal ground." *See Smith v. Equifax Servs., Inc.*, 537 So. 2d 463, 465 (Ala. 1988) (citation omitted); *see also Fletcher v. Lupo*, 2009 WL 10688890, at *6 (N.D. Ala. Apr. 15, 2009) (making this observation about *Machen*).

5

*Gulley*, 2024 WL 1329911, at *4. Thus, "the Alabama Supreme Court permitted a negligent supervision claim to proceed against individual supervisors and did not conclude that such a claim was unavailable," *id.*, which provides strong evidence that such a claim is cognizable and not "futile, as a matter of black letter law," (doc. 153 at 2, para. 4) as the Defendants claim.[4] While there is ample caselaw from federal district courts in Alabama supporting the Defendants' position, *see, e.g., Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001), the Court is not persuaded.[5] At bottom, there is simply a "lack of Alabama authority holding or even stating that a master-servant relationship is a necessary element of a negligent supervision claim." *Fletcher*, 2009 WL 10688890, at *7. In the absence of such authority on this issue of state law, and in light of the Alabama Supreme Court's ruling in *Machen*, this Court declines to construct its own barrier to Chandler's state law claim against Rodgers.

Further, despite Chandler's self-labeling of her claim against Rodgers as "negligent training, education, and evaluation," her claim as pled more closely resembles a typical negligence claim, rather than one falling within the "negligent supervision"

---

[4] "It is true that, even where a defendant has been granted a right by [her] principal to supervise and control the work of a co-agent tortfeasor, the defendant supervisor can have no *vicarious* liability for the tort of the co-agent where there is no master-servant relationship between them. *See Ware v. Timmons*, 954 So. 2d 545, 550–555 (Ala. 2006). However, that is not to say that a supervisor who is not a 'master' is effectively *immune* from liability where the supervisor is [*herself*] guilty of negligence in connection with [her] supervision of a co-agent or co-employee that proximately causes injury to a third party." *Fletcher*, 2009 WL 10688890, at *6 (emphases in original).

[5] The Court is aware of its language in a prior opinion, *Fed. Republic of Nigeria v. Ross*, 2023 WL 6926260, at *5 (M.D. Ala. Oct. 19, 2023), which suggests a contrary result. As the Court acknowledged there, this issue was "not addressed by the parties" in that case, and the cases cited by the Court came from other federal district courts—not the Alabama Supreme Court, the ultimate arbiter of state law. Further, the issue was not dispositive, as the plaintiffs had not otherwise met their burden at summary judgment.

framework as articulated by the Alabama Supreme Court.  For example, in Chandler's

proposed third amended complaint, she alleges that (1) Rodgers owed a "duty of care to

Plaintiff," (doc. 151-1 at 14, para. 71), (2) Rodgers "breached or failed to comply with

the standard of care," (*id.*), and (3) "Plaintiff suffered injuries and damages," (*id.* at 25,

para. 85), (4) "[a]s a proximate result of [Rodgers'] negligence" (*id.*).  These allegations

track the elements of a negligence claim under Alabama law, not a negligent supervision

claim.  *Compare Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala.

2001) ("The elements of a negligence claim are a duty, a breach of that duty, causation,

and damage." (citation omitted)) *with Lane v. Cent. Bank of Ala., N.A.*, 425 So. 2d 1098,

1100 (Ala. 1983) (recognizing that a "master" may be liable for the "incompetency" of its

"servant" when it is "established by affirmative proof that [the servant's] incompetency

was actually known by the master or that, had [the master] exercised due and proper

diligence, [the master] would have learned that which would charge [the master] in the

law with such knowledge").  And as this Court said in *Gulley*:

> That courts have analyzed claims against employers with the
> label "negligent supervision" or that federal district courts
> have determined "negligent supervision claims" cannot lie
> against an individual supervisory employee does not change
> the substance of the [Plaintiff's] allegations in this case or that
> the [Plaintiff] seek[s] to hold [the Defendant] directly liable
> for [her] own [negligent] conduct.  It is well settled that a
> plaintiff is the master of [] her complaint.

2024 WL 1329911, at *6 (citations omitted).  Accordingly, Chandler's proposed

amendment to her complaint would not be futile on the grounds articulated by the

Defendants.

**B.    Undue Delay and Bad Faith**

The record does not support a finding of undue delay.  Chandler claims that she only seeks to add Rodgers as a defendant now because she "only recently discovered that Nurse Rodgers was directly responsible for training and educating Defendants and the other labor and delivery nurses at Andalusia Health" while deposing Brooke Greathouse ("Greathouse"), the "nurse educator" at Andalusia health who is not a party to this litigation, on February 26, 2025. (Doc. 158 at 11).  According to Chandler, Greathouse testified that "her responsibility . . . to educate labor and delivery nurses at Andalusia [H]ealth had been offloaded onto . . . Nurse Rodgers" by the time the events underlying this litigation took place. (*Id.*).  The Defendants counter that Chandler knew about Rodgers' "supervisory role in Andalusia Health's Labor and Delivery Department" since the Defendants "respon[ded] to [Chandler's] first set of interrogatories" in August of 2023. (Doc. 153 at 5, para. 9).

Chandler knowing that Rodgers held a *supervisory* position at Andalusia Health does not equate to knowledge of her holding a *training* position at the hospital.  Based on the materials before the Court, it seems Chandler had two opportunities to learn of Rodgers' role prior to deposing Greathouse.  The first came upon the parties' exchange of their first interrogatories in August and September 2023.  Chandler explicitly asked the Defendants for the identity of the nurse educator at Andalusia Health. (*See* doc. 153-1 at 4).  Rather than providing such information, the Defendants objected to the interrogatory. (*Id.*).  The second opportunity was during Rodgers' deposition in October 2023, which, as the parties agree, could not be completed for reasons outside of Chandler's control.

Finally, Chandler moved to amend her complaint within the window allowed by the Court in its USO. (*See* doc. 145 at 2). Under these circumstances, the Court cannot make a finding of undue delay.

The record similarly does not support a finding of bad faith. The Defendants argue there is "no conceivable reason" for Chandler to sue Rodgers "other than to try to manufacture negotiation leverage by capitalizing on" Rodgers' "health risks and concerns[6] that [Chandler] knows will be exacerbated by making Nurse Rodgers a party-defendant." (Doc. 153 at 6, para. 14). But there is a conceivable reason for Chandler to sue Rodgers, as the Court has found that Chandler's proposed amendment would not be futile. And as to Rodgers' personal circumstances, the Court has no doubt that participating in litigation surrounding the death of a young child is distressing. Indeed, the Court doubts *any* party to this litigation wishes to be in his or her respective position. But Rodgers' personal distress over a potentially viable claim against her is not a sufficient basis for the Court to conclude that Chandler brings her claim in bad faith.

## VI.  CONCLUSION

For the reasons stated above, and for good cause, it is

ORDERED that Chandler's motion for leave to file a third amended complaint (doc. 151) is GRANTED. The third amended complaint (doc. 152) is now the operative complaint in this matter. It is further

---

[6] The Court has reviewed and considered the Defendants' sealed exhibits discussing these health risks.

ORDERED that Chandler's motion to compel mediation (doc. 146) is DENIED.

The mandatory mediation deadline in this case remains September 29, 2025.

DONE this 28th day of May, 2025.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE